UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NICHOLAS A. RESTUCCIA, </br></br> Plaintiff, </br></br> v. </br></br> H&R BLOCK TAX SERVICES LLC, </br> BERKOWITZ OLIVER LLP, </br> SHAWN MOORE and NANCY BROCK </br></br> Defendants. | Case No.:_____ |

## **COMPLAINT**

The Plaintiff Nicholas A. Restuccia ("Plaintiff" or "Mr. Restuccia") hereby complains against the defendants H&R Block Tax Services, LLC ("H&R" or "Block"), counsel for H&R, Berkowitz Oliver, LLP ("Berkowitz"), defendant Shawn Moore ("Moore"), personally and against Nancy Brock ("Brock"), personally.  Through this action Plaintiff asserts claims for: (i) the entry of a declaratory judgment pursuant to 28 U.S.C. §2201 that no contract exists between Mr. Restuccia and Block; (ii) fraud and fraud in the inducement; and (iii) Defendants' knowing and willful violation of M.G.L. c. 93A.

## **JURISDICTION AND VENUE**

1. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §1332(a)(1) because: (i) the amount in controversy exceeds $75,000.00, exclusive of interest and costs, (ii) Plaintiff is a resident of Massachusetts and (iii) Defendants are not residents of Massachusetts.

2. Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. §1391(b)(2) because a substantial portion of the events giving rise to this action occurred in Massachusetts.

## PARTIES

3. Plaintiff Nicholas A. Restuccia. is an individual who resides at 680 Revere Beach Blvd, Revere, Massachusetts 02151.

4. Defendant H&R Block Tax Services, LLC is a Missouri limited liability company with a principal place of business One H&R Block Way, Kansas City, Missouri 64105.

5. Defendant Berkowitz Oliver, LLP is a Missouri limited liability partnership with a principal place of business of 2600 Grand Boulevard, Suite 1200, Kansas City, MO 64108.

6. Defendant Shawn Moore ("Moore") is an individual residing in Missouri. At all times material, Moore served as a Vice President of Block.

7. Defendant Nancy Brock ("Brock") is an individual residing in Missouri. At all times material, Brock served as a Project Manager for Block.

## ALLEGATIONS

### Rizzo & Restuccia, P.C. and H&R Enter into Business Contracts

8. At all times material, R&R has been engaged in provided tax and accounting services to individuals and businesses in the Commonwealth of Massachusetts from its offices located in Massachusetts.

9. At all times material, Mr. Restuccia has served as the President of the accounting firm, Rizzo & Restuccia, P.C. ("R&R").

10. On or around December 22, 2015, R&R entered into a certain Franchise Lease Agreement (the "FLA") with H&R, whereby R&R was granted the right to use certain of H&R's licensed marks over the course of a ten (10) year period as well as certain commercial tax software known as "Blockworks".

11. Moore signed the FLA on behalf of Block.

12. Plaintiff executed the FLA in his capacity as President of R&R.

13. Plaintiff was not a party to the FLA.

14. On or around December 22, 2015, R&R and Defendant entered into a certain Franchise Conversion Agreement, whereby R&R's existing business, located in Peabody Massachusetts, was converted into an H&R Block franchise business (the "FCA").

15. Moore signed the FCA on behalf of Block.

16. Plaintiff executed the FCA in his capacity as President of R&R.

17. Plaintiff was not a party to the FCA.

18. In August 2018, R&R and Block were engaged in a transaction whereby H&R agreed to contribute certain monies in connection with the acquisition by R&R of an accounting business located in Haverhill, Massachusetts, known as Michael F. Reilly, C.P.A., P.C. (the "Reilly Firm").

19. Ultimately, on or about August 20, 2018, R&R and H&R entered into a certain Assisted Acquisition Agreement (the "AAA") regarding R&R's acquisition of the "Reilly Firm" (the AAA is collectively referred to with the FLA and the FCA as the "Contracts"). A true and correct copy of the AAA is attached hereto as Exhibit A.

20. Brock, on behalf of H&R, sent draft AAA contractual documents to Restuccia for review and execution.

21. During the negotiation of the AAA, on or around August 13, 2018, i.e., prior to the execution of the AAA, Plaintiff noticed that the draft AAA surprisingly contained a personal guaranty provision and immediately informed H&R that he would not agree to assume any personal liability in connection with the AAA.

22. In particular, on August 14, 2018, Plaintiff wrote to Moore as follows, demanding that the personal liability provision be removed:

> Really don't care what Block and attorneys say….I will not sign personally. If it means deal is off it is off..
>
> I didn't set up corporations to then sign personally….
>
> I have an even better idea…Why doesn't Block buy me out also!
>
> Nick

23. Moore emailed Plaintiff, copying Brock, the same day confirming the deletion:

> I don't want two years of work for many people to be wasted over this term, I was able to win over the legal department. The personal liability provision will be deleted and a new agreement should be ready in the morning.

24. That same day, Brock, copying Moore, emailed Plaintiff representing that "[t]he updated AA Agreement and other contract documents have been resent to you for review and signature. I will give you a call."

25. R&R closed on the acquisition of the Reilly Firm on or about August 20, 2018.

26. Moore signed the AAA on behalf of Block.

27. Plaintiff executed the AAA in his capacity as President of R&R.

28. Plaintiff was not a party to the AAA in his individual capacity.

### H&R Never Treated Mr. Restuccia As an Obligor or Personal Guarantor Under the Contracts

29. Consistent with the obvious letter and purpose of the Contracts, whatever services that Block performed and/or agreed to perform under the Contracts were promised and/or furnished to R&R, not Plaintiff personally.

30. Likewise, any performance promised and/or furnished to Block under the Contracts were promised and/or furnished by R&R, not Mr. Restuccia personally.

31. Moreover, at no time did H&R ever ask Mr. Restuccia to personally guaranty the Contracts.

32.     At no time did H&R ever ask Mr. Restuccia to provide his personal financial information or a "net worth" statement for the purpose of assessing his personal creditworthiness.

### Disputes Arise Between R&R and Block
### Concerning Performance of the Contracts

33.     From at least 2016 through the time that R&R commenced an Arbitration Proceeding against Block, there were certain disputes asserted by R&R and Block against one another concerning their respective rights, obligations and conduct related to the Contracts.

34.     Despite ongoing disputes between R&R and Block concerning their respective promises and performances under the Contracts since at least 2016, Block never made a demand on Mr. Restuccia personally.

35.     On or about November 21, 2019, Defendant Moore travelled to R&R's office in Peabody, Massachusetts to meet with R&R in connection with resolving the parties' contractual relations and, in particular, a dispute regarding royalties allegedly owed by R&R to Block arising from the former Michael F. Reilly office under the AAA.

36.     Following this meeting, and continuing through at least February 2020, Moore proposed to R&R a reduced and compromised royalty payment of approximately one hundred eighty-eight thousand dollars ($188,000.00) to be paid by R&R to Block over a two-to-three-year period.

37.     Mr. Restuccia, as President of R&R explained to Moore that such a proposal was not feasible since R&R was not generating enough free cash flow, due to the failures of Block pursuant to the Contracts, to meet those proposed payment terms. At no time did Block, Moore or anyone else acting on behalf of Block assert or demand that Plaintiff was personally responsible under the AAA or any of the Contracts.

38.     In fact, on February 25, 2020, Moore emailed R&R in connection with the parties ongoing contractual disputes, and asserted, that:

> Nick –
> As I mentioned earlier, we will continue forward with our breach letter if you are unwilling to put in place a payment plan and begin paying royalties as we agreed upon in our face to face meeting (that you requested).
> We have discussed parting ways, however this is a discussion that you did not want to entertain given that you are unwilling to pay HRB to exit the network. As a reminder, using very rough estimates for purposes of discussion the amount would be significant as you have ~$800k that has been paid to you or owed to you HRB of which we have received $75k in royalties, thus any negotiation would require payment to HRB.
>
> As a reminder, very rough estimate of figures for discussion purposes:
> **Money Received by R&R from HRB:**
> $430k HRB Conversion Payment
> $ 38K Software Reimbursement
> **Money owed to HRB by R&R:**
> $189k Outstanding royalties and loan deferment (net of ~$150k of HRB allowances in an effort to move us forward)
> **Money received by R&R:**
> $75k Royalties paid to HRB

39.     In or around January or February 2021, R&R and Block participated in mediation to attempt to resolve their ongoing disputes (the "Mediation"). At no time before, during or after the Mediation did Block assert or demand that Plaintiff was personally responsible under any of the Contracts.

**R&R Commences Arbitration Against H&R**

40.     On or about September 16, 2020 R&R commenced the Arbitration Proceeding against H&R, which is styled *Rizzo & Restuccia, P.C. v. H&R Block Tax Services, LLC*, AAA Case No. 01-20-0014-8856.

41.     Through the Arbitration Proceeding, R&R brought claims against H&R for breach of contract and breach of the implied covenant of good faith and fair dealing, stemming

from H&R's alleged failure to perform under the Contracts. Specifically, R&R's claims against H&R concern H&R's failure to provide R&R with working tax preparation software, as it was required to do under the Contracts.  A true and correct copy of R&R's *More Definitive Statement of Claims* is attached hereto as Exhibit B.

42. On October 7, 2020, H&R filed its original Response to Plaintiff's Demand for Arbitration and Counter Claims against Plaintiff (the "Original Counterclaim"). Through its Original Counterclaim, H&R alleged that R&R failed to pay H&R certain monies it claimed to be owed under the parties' contracts.  H&R asserted counterclaims only against R&R for breach of contract and unjust enrichment on account of R&R's purported breach. A true and correct copy of the Original Counterclaim is attached hereto as Exhibit C.

43. Notably, H&R did not assert any claim against Mr. Restuccia in the Original Counterclaim.

44. Throughout the Arbitration Proceeding, Berkowitz represented H&R and prepared and filed all pleadings therein on H&R's behalf.

### R&R Files for Bankruptcy Protection

45. On March 16, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Case").

46. On March 18, 2021, counsel for R&R notified counsel for H&R, defendant Berkowitz, of the pending Bankruptcy Case.

## Block, Berkowitz and Moore
## Hatch a Plan to Sue Mr. Restuccia Personally

47. After being notified of the Debtor's bankruptcy filing, Block with its counsel, and upon information and belief, certain Block staff, including, but not limited to Moore, hatched a plan to assert a claim against Mr. Restuccia personally, despite knowing that he was neither an obligor under the Contracts nor a personal guarantor.

48. The plain purpose of this plan was to recover amounts that they had claimed against R&R, which were stayed from further prosecution by R&R's bankruptcy filing and were, most importantly, in jeopardy given R&R's right to reorganize its debts under the Bankruptcy Code.

49. In particular, Block, Berkowitz and Moore knew that Plaintiff had never agreed to be personally liable on the Contracts, had never signed a personal guaranty, had never agreed to perform under or receive the benefits of the Contracts and that Block had never asserted any liability against Plaintiff personally throughout the course of dealings between Block and R&R.

50. Notwithstanding this knowledge, and consistent with their plan, on March 24, 2021, H&R, Berkowitz, on behalf of H&R, filed Amended Counterclaims *against Mr. Restuccia personally* (the "Amended Counterclaim"). A true and correct copy of the March 24, 2021 Amended Counterclaim is attached hereto as Exhibit D.

51. Notably, the factual and legal allegations set forth in the Amended Counterclaims against Mr. Restuccia are identical to those set forth in the Original Counterclaim against R&R.

52. Through the Amended Counterclaim against Plaintiff, H&R seeks to collect in excess of $500,000.00 from Mr. Restuccia personally under the Contracts.

53. Nevertheless, when Block and Berkowitz filed the Original Counterclaim, they never named Mr. Restuccia because they knew he had no personal liability under the Contracts, whether as a direct party or as a personal guarantor as a matter of fact and law.

54. Further, at no time prior to filing the Amended Counterclaim did H&R seek to compel performance of any of R&R's obligations under the Contracts from Mr. Restuccia personally.

55. On March 31, 2021, H&R filed a *Motion to Join Nicholas A. Restuccia as a Third-Party Counterclaim Respondent* in the Arbitration Proceeding (the "Motion to Join"). A true and correct copy of the Motion to Join is attached hereto as Exhibit E.

56. Further evidencing that H&R's claims against R&R are identical to those now being alleged against Mr. Restuccia is H&R's assertion in the Motion to Join that "[a]s is readily apparent from this plain language, H&R Block specifically contracted for the right to pursue Restuccia in his individual capacity to obtain performance under the contracts. And for good reason given that, pursuant to the contracts, H&R Block made payments of hundreds of thousands of dollars, among other valuable consideration…To protect H&R Block's substantial investment, it required that an individual be responsible for the obligations under the contracts in addition to the business entity." *Id.* at pg. 2.

57. H&R similarly alleges in the Motion to Join that its purported claims against Mr. Restuccia are "[c]onsistent with well-settled principles of agency, Restuccia could, and did, expressly agree to incur personal responsibility under the contracts in addition to incurring responsibility on behalf of his company." *Id.* at pg. 3.

58. H&R further alleges that "[i]n accordance with the parties' manifest intent, demonstrated by both the explicit language and implicit in the circumstances of the contracts'

9

dependency and interrelation, H&R Block is entitled to charge Restuccia in his individual capacity *with the entire liability under the contracts*." *Id* at pg. 5. (emphasis added).

59. Moreover, through the Motion to Join, H&R expresses its intention to prosecute its claims against both R&R and Mr. Restuccia concurrently so as to avoid being "faced with the Hobson's choice of filing a lawsuit in violation of the arbitration provision or initiating a new and separate arbitration and seeking consolidation to avoid the possibility of conflicting rulings. In effect, disallowing joinder would result in an unfortunate paradox where the parties to contracts containing a broad arbitration provision, which was agreed to for the purpose of providing a cost-efficient means of resolving disputes, find themselves facing multiple related proceedings and/or costly procedural maneuvering to consolidate related proceedings." *Id.* pg. 9.

60. Defendants' fraudulent attempt to join Mr. Restuccia in the Arbitration Proceeding is aimed at circumventing the bankruptcy process, R&R's potential compromise and/or discharge of any claim held by H&R against it and the automatic stay in order to impose personal liability against Mr. Restuccia where they know none exists.

## COUNT I
### (Declaratory Judgment, 28 U.S.C. §2201)

61. The Plaintiff repeats and realleges the allegations in the preceding paragraphs as if the same were set forth more fully herein.

62. An actual controversy exists between Plaintiff on the one hand and Defendant on the other concerning Plaintiff's obligations under the Contracts.

63. As alleged herein, Plaintiff did not execute or otherwise agreed to personally join in the Contracts and/or assume personal liability thereunder.

64. This Court has the power and authority to declare the rights and other legal relations of any interested party seeking such a declaration.

65. The Court should enter an order declaring that Plaintiff is not a party to the Contracts and is not liable to Defendant thereunder.

## COUNT II
### (Breach of M.G.L. c. 93A §11 )

66. The Plaintiff repeats and realleges the allegations in the preceding paragraphs as if the same were set forth more fully herein.

67. At all times material, Plaintiff resided in Massachusetts and acted in his capacity as President of R&R.

68. As such, Plaintiff was "engage[d] in the conduct of … trade or commerce" within the meaning of c. 93A, section 11.

69. The conduct alleged by Plaintiff herein was directed towards Plaintiff in Massachusetts, the center of gravity of the conduct was at all times material Massachusetts, and, therefore, it occurred "primarily and substantially within the Commonwealth" within the meaning of c. 93A, section 11.

70. As a result of Defendants' conduct as alleged herein, Plaintiff has suffered a loss of money and/or property.

71. Defendants' conduct as alleged herein has been willful and/or knowing.

72. Defendants' conduct has damaged and continues to damage Plaintiff in an amount to be determined at trial.

## COUNT III
### (Fraud)

73. The Plaintiff repeats and realleges the allegations in the preceding paragraphs as if the same were set forth more fully herein.

74. To the extent that the Court declares that Plaintiff was a party to the Contracts, they are null and void on the basis of fraud.

75. As alleged herein, Block and Moore prepared and issued the Contracts seeking to eventually hold Restuccia personally liable on the Contracts while knowing that Restuccia had no such intent to be bound under the Contracts.

76. Block and Moore knew that Restuccia would never consciously agree to be bound personally to the Contracts.

77. To that end, Block and Moore misrepresented the essential nature of the Contracts at issuance, i.e., that they were only binding on the Franchisee, R&R.

78. Block and Moore knew of such falsity and intended that Restuccia, as President of R&R, rely on such misrepresentations to induce R&R – and in Block and Moore's mind – the Plaintiff to enter into the Contracts.

79. Restuccia relied upon defendants' misrepresentations to his detriment and has been damaged in an amount to be determined at trial.

## COUNT III
### (Fraudulent Inducement)

80. The Plaintiff repeats and realleges the allegations in the preceding paragraphs as if the same were set forth more fully herein.

81. To the extent that the Court declares that Plaintiff was a party to the AAA and or the Contracts, they are null and void on the basis of fraudulent inducement.

82. As alleged herein, Block, Moore and Brock prepared and issued the AAA seeking to eventually hold Restuccia personally liable on the Contracts while knowing that Restuccia had no such intent to be bound under the Contracts.

83. Block, Moore and Brock knew that Restuccia would never consciously agree to be bound personally to the Contracts.

84. To that end, Block, Moore and Brock misrepresented that they agreed not to insert a personal guaranty provision into the AAA.

85. Block and Moore knew of the falsity of their misrepresentations and actually intended that Restuccia, as President of R&R, rely on such misrepresentations to induce R&R – and as intended by Block, Moore and Brock – the Plaintiff to enter into the AAA.

86. Restuccia relied upon defendants' misrepresentations to his detriment and has been damaged in an amount to be determined at trial.

The factual allegations and claims contained herein are based upon information heretofore obtained by the Plaintiff. Upon conducting discovery in this action, Plaintiff may amend or supplement the allegations and claims in the Complaint to reflect that discovery.

## JURY DEMAND

**Plaintiff demands a trial by jury on all claims so triable.**

**REQUEST FOR RELIEF**

WHEREFORE, the plaintiff Nicholas A. Restuccia hereby respectfully requests that this Court:

i. Enter judgment in favor of Plaintiff and against defendants named herein;

ii. Declare that Plaintiff is not a party to, or personally liable under, the Contracts;

iii. Declare that the Contracts are void as to Plaintiff;

iv. Award Plaintiff multiple damages pursuant to G.L. c. 93A, §11, plus interest and costs;

v. Award Plaintiff his attorneys' fees and costs incurred in bringing this action; and

vi. Such other and further damages, costs fees or other relief at law or equity as the Plaintiff may recover under any applicable law or equitable doctrine and/or the Court deems appropriate.

Respectfully Submitted,

NICHOLAS A. RESTUCCIA,

By his attorneys,

/s/ *Thomas H. Curran*
Thomas H. Curran, BBO #550759
tcurran@curranantonelli.com
Peter Antonelli, BBO # 661526
pantonelli@curranantonelli.com
Christopher Marks BBO #705612
cmarks@curranantonelli.com
Curran Antonelli, LLP
Ten Post Office Square, Suite 800 South
Boston, MA 02109
Telephone: (617) 207-8670
Dated: April 12, 2021                Facsimile: (617) 850-9001