UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| NICHOLAS RESTUCCIA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 21-cv-10604-ADB |
| H&R BLOCK TAX SERVICES LLC, | * | |
| BERKOWITZ OLIVER LLP, SHAWN | * | |
| MOORE, and NANCY BROCK, | * | |
| | * | |
| Defendants. | * | |
| | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

In this action, Plaintiff Nicholas Restuccia brings various claims against Defendants

H&R Block Tax Services LLC ("H&R Block"), Berkowitz Oliver LLP ("Berkowitz Oliver"),

Shawn Moore, and Nancy Brock (together with Mr. Moore, the "Individual Defendants," and

together with H&R Block, Berkowitz Oliver, and Mr. Moore, "Defendants") related to a series of

contracts between his company and H&R Block.  [ECF No. 1 ("Compl.")].  Currently before the

Court are Defendants' motions to dismiss.  [ECF No. 8 (H&R Block); ECF No. 11 (Berkowitz

Oliver); ECF No. 14 (Mr. Moore); ECF No. 30 (Ms. Brock)].  For the reasons set forth below,

the motions are GRANTED.

I.      **BACKGROUND**

   A.    **Factual Background**

Most of the following facts are taken from the complaint, [Compl.], the factual

allegations of which are assumed to be true when considering a motion to dismiss, Ruivo v.

Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).  Because there are pending motions to

compel arbitration and to dismiss for lack of personal jurisdiction, the Court may also consider additional materials.  See Cullinane v. Uber Techs., Inc., 893 F.3d 53, 55 (1st Cir. 2018) (noting that courts may consider documents submitted in support of motion to compel arbitration); Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016) (noting that in ruling on personal jurisdiction motions, courts may consider "whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts").  The Court provides the following background consistent with this standard.

1.    The Parties

Mr. Restuccia resides in Revere, Massachusetts and is the President of an accounting firm called Rizzo & Restuccia, P.C. ("R&R").[1]  [Compl. ¶¶ 3, 8–9].  H&R Block is a Missouri LLC with its principal place of business in Kansas City, Missouri.  [Id. ¶ 4].  Berkowitz Oliver is a law firm, organized as a Missouri LLP, with its principal place of business in Kansas City, Missouri.  [Id. ¶ 5].  The firm's only other office is located in Kansas, and the firm has never had any offices in Massachusetts. [ECF No. 12-1 ¶ 2].  None of the firm's attorneys live, or are barred, in Massachusetts,[2] [id. ¶ 3], and the firm does not regularly conduct business in Massachusetts or target (or routinely serve) Massachusetts clients, [id. ¶ 5].  Mr. Moore is a Vice President of Acquisitions & Development at H&R Block, [ECF No. 15-1 ¶ 4], and Ms. Brock is a Project Manager there, [ECF No. 31-1 ¶ 4].  Both reside in Kansas.  [ECF No. 15-1 ¶ 2; ECF No. 31-1 ¶ 2].

---

[1] R&R is currently in Chapter 11 bankruptcy proceedings.  See [Compl. ¶ 45].

[2] None of Berkowitz Oliver's non-attorney employees live in Massachusetts either.  [ECF No. 12-1 ¶ 3].

2.     R&R's Relationship with H&R Block

On or about December 22, 2015, R&R entered into a Franchise License Agreement (the "FLA") with H&R Block, pursuant to which R&R obtained the right to use some of H&R Block's trademarks and software.  [Compl. ¶ 10].  Mr. Moore signed the FLA on behalf of H&R Block, and Mr. Restuccia signed on behalf of R&R as "Franchisee and Principal."[3]  [ECF No. 9-1 at 37].  The FLA contained a "Choice of Venue" provision which was subsequently amended to read: "All disputes between H&R Block and Franchisee will be resolved through binding arbitration administered by the American Arbitration Association (AAA) pursuant to its Commercial Arbitration Rules and Mediation Procedures and related fee schedules."  [ECF No. 9-3 at 3 (amended provision)]; cf. [ECF No. 9-1 at 34 (original provision)].  On the same day the FLA was executed, R&R and H&R Block also executed a Franchisee Conversion Agreement (the "FCA"), whereby R&R's existing business in Peabody, Massachusetts was converted into an H&R Block franchise.  [Compl. ¶ 14].  Mr. Moore signed the FCA on H&R Block's behalf, and Mr. Restuccia signed on R&R's behalf as "Franchisee and Principal."  [ECF No. 9-2 at 9].

In August 2018, R&R sought to acquire an accounting business called Michael F. Reilly, C.P.A., P.C. ("Reilly").  [Compl. ¶¶ 18–19].  To facilitate that transaction, R&R and H&R Block

---

[3] The FLA defines "Principal" as

> Franchisee, if Franchisee is an individual; or an individual approved by H&R Block who holds an Equity Interest in Franchisee, if Franchisee is a business entity, who personally assumes and agrees to be bound by all of the terms of [the FLA] in a document satisfactory to H&R Block, and to whom H&R Block may look to the individual, in addition to the business entity, for the proper performance of Franchisee's obligations under [the FLA].

[ECF No. 9-1 at 6].  The FLA also provides that "[t]he individual named below as Principal personally assumes and agrees to be personally bound by, faithfully perform, and cure the default of any performance of all terms, covenants, conditions, and obligations of Franchisee under [the FLA]."  [Id. at 35].

executed an Assisted Acquisition Agreement (the "Acquisition Agreement," and, together with the FLA and FCA, the "Contracts"), pursuant to which H&R Block agreed to contribute a portion of the purchase price in exchange for ownership of some of Reilly's assets. [Id.; ECF No. 1-1]. Before the Acquisition Agreement was executed, the parties exchanged drafts. See [Compl. ¶¶ 20–24]. When Mr. Restuccia noticed that the draft sent to him by Ms. Brock contained a personal guaranty provision, he sent Mr. Moore an email noting that he would not sign a contract with such a provision. [Id. ¶¶ 21–22]. H&R Block acceded, the draft was revised, and the parties ultimately executed the Acquisition Agreement, without the personal guaranty provision, on August 20, 2018. [Id. ¶¶ 23–24]. Mr. Moore signed on H&R Block's behalf, and Mr. Restuccia signed as R&R's President. [Id. ¶¶ 26–27; ECF No. 1-1 at 4].

From time to time, the parties had disputes regarding the Contracts, but H&R Block never tried to hold Mr. Restuccia personally liable, sought a personal guaranty, or inquired about his personal finances. [Compl. ¶¶ 31–32, 34]. On or about November 21, 2019, Mr. Moore traveled to R&R's offices in Massachusetts in an effort to resolve a dispute between the parties concerning royalties due under the Acquisition Agreement, but his efforts were unsuccessful. [Id. ¶¶ 35, 37–38]. In early 2021, the parties attended mediation but were, again, unable to resolve their dispute. [Id. ¶ 39].

### 3.   The Arbitration and R&R's Bankruptcy

On or about September 16, 2020, R&R commenced an arbitration proceeding against H&R Block, before the American Arbitration Association (the "AAA"), captioned Rizzo & Restuccia, P.C. v. H&R Block Tax Services, LLC, AAA Case No. 01-20-0014-8856 (the "Arbitration"). [Compl. ¶ 40]. In the Arbitration, R&R brought claims against H&R Block for breach of contract and breach of the implied covenant of good faith and fair dealing based on its purported failure to perform under the Contracts. [Id. ¶ 41]. On October 7, 2020, H&R Block,

by and through its counsel in the Arbitration, Berkowitz Oliver, filed its response and made counterclaims against R&R for breach of contract and unjust enrichment.  [Id. ¶¶ 42, 44; ECF No. 1-3].

On March 16, 2021, R&R filed for Chapter 11 bankruptcy.  [Compl. ¶ 45].  Two days later, R&R's attorneys informed H&R Block's attorneys at Berkowitz Oliver of the filing.  [Id. ¶ 46].  On March 24, 2021, H&R Block filed amended counterclaims against Mr. Restuccia in his personal capacity, seeking, for the first time, to hold him personally liable under the Contracts.  [Id. ¶ 50].  A week later, H&R Block filed a motion to have Mr. Restuccia brought into the Arbitration as a third-party counterclaim respondent.  [Id. ¶ 55].  The Arbitration, which is taking place in Missouri, is currently stayed because of R&R's pending bankruptcy.  [ECF No. 9-4 at 2; ECF No. 9-6].

### B. Procedural Background

On April 12, 2021, Mr. Restuccia initiated this lawsuit, seeking a declaratory judgment, [Compl. ¶¶ 61–65], and asserting Chapter 93A and fraud claims, [id. ¶¶ 66–86].  Each of the defendants has moved to dismiss.  [ECF No. 8 (H&R Block); ECF No. 11 (Berkowitz Oliver); ECF No. 14 (Mr. Moore); ECF No. 30 (Ms. Brock)].  Mr. Restuccia opposed all four motions, [ECF No. 13 (H&R Block); ECF No. 16 (Berkowitz Oliver); ECF No. 19 (Mr. Moore); ECF No. 33 (Ms. Brock)], and each defendant has filed a reply, [ECF No. 20 (H&R Block); ECF No. 21 (Berkowitz Oliver); ECF No. 24 (Mr. Moore); ECF No. 36 (Ms. Brock)].

## II. BERKOWITZ OLIVER AND THE INDIVIDUAL DEFENDANTS

Berkowitz Oliver, Mr. Moore, and Ms. Brock each move to dismiss for lack of personal jurisdiction.  See [ECF No. 12 at 14–22 (Berkowitz Oliver); ECF No. 15 at 10–19 (Mr. Moore); ECF No. 31 at 7–15 (Ms. Brock)].  Mr. Restuccia maintains that all three are subject to personal

jurisdiction in Massachusetts.  See [ECF No. 16 at 6–16 (Berkowitz Oliver); ECF No. 19 at 6–19 (Mr. Moore); ECF No. 33 at 7–17 (Ms. Brock)].  For the reasons that follow, the Court finds that it lacks personal jurisdiction over all three.[4]

## A.     General Legal Standard

Personal jurisdiction refers to a court's "power to require the parties to obey its [orders]." Hannon v. Beard, 524 F.3d 275, 279 (1st Cir. 2008) (quoting Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002)).  By choosing this forum, Mr. Restuccia has consented to the Court's personal jurisdiction.  See Driscoll v. McCann, 505 F. Supp. 3d 32, 36 (D. Mass. 2020).  As to Berkowitz Oliver and the Individual Defendants, however, the Due Process Clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'"  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471−72 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)).  Therefore, the Court may not exercise jurisdiction over them unless their "conduct and connection with [Massachusetts] are such that [they] should reasonably anticipate being haled into court []here."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Mr. Restuccia bears the burden of establishing that jurisdiction exists over Defendants.  A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016) (citing Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008)).  "When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing . . . the 'prima facie' standard governs its determination."  United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618

---

[4] Although Berkowitz Oliver and the Individual Defendants have made other arguments in favor of dismissal, the Court will not address them because it lacks personal jurisdiction.

(1st Cir. 2001).  Under the prima facie standard, the plaintiff must "proffer[] evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction."  A Corp., 812 F.3d at 58 (quoting Prairie Eye Ctr., 530 F.3d at 26).

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction 'is the functional equivalent of a state court sitting in the forum state.'"[5]  Daynard, 290 F.3d at 51 (quoting Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995)).  "Accordingly, this Court may only exercise personal jurisdiction within the limits set by Massachusetts' long-arm statute and the due process clause of the Constitution."  Kingston v. AngioDynamics, Inc., No. 21-cv-10234, 2021 WL 3022320, at *5 (D. Mass. July 16, 2021) (citing Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997)).

## B.    Berkowitz Oliver

"Because the [Massachusetts] long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process . . . a determination under the long-arm statute is to precede consideration of the constitutional question."  SCVNGR, Inc. v. Punchh, Inc., 85 N.E.3d 50, 52 (Mass. 2017).  Section 3 of the Massachusetts long-arm statute allows for the exercise of "personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from" various activities within or outside of Massachusetts.  Mass. Gen. Laws ch. 223A, § 3.

Mr. Restuccia argues that three subsections of the Massachusetts long-arm statute apply to Berkowitz Oliver: §§ 3(a), (c), and (d).  [ECF No. 16 at 6]; see also Mass. Gen. Laws ch. 233A, §§ 3(a), 3(c), 3(d).  The Court addresses each in turn.

---

[5] Mr. Restuccia asserts diversity jurisdiction.  See [Compl. ¶ 1].

Under § 3(a), "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . transacting any business in this commonwealth." Mass. Gen. Laws ch. 223A, § 3(a). Section 3(a)'s "reference to 'transacting any business' does not require that the defendant have engaged in commercial activity. That language is general and applies to any purposeful acts by an individual, whether personal, private, or commercial." Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 982 (1st Cir. 1986) (quoting Ross v. Ross, 358 N.E.2d 437, 439 (Mass. 1976)). "[T]he defendant's involvement need not be major, as 'just a few acts on [his] part can often suffice to satisfy [subsection (a)]'s threshold for transacting business.'" Scuderi Grp., LLC v. LGD Tech., LLC, 575 F. Supp. 2d 312, 319 (D. Mass. 2008) (quoting Workgroup Tech. Corp. v. MGM Grand Hotel, LLC, 246 F. Supp. 2d 102, 110 (D. Mass. 2003)). Although "transacting any business . . . has been construed broadly," Tatro v. Manor Care, Inc., 625 N.E.2d 549, 551 (Mass. 1994) (citations omitted), the test "is designed to identify deliberate, as distinguished from fortuitous, contacts with the forum by the nonresident party." Lyle Richards, 132 F.3d at 112.

Section 3(a) is inapplicable because Berkowitz Oliver has not transacted any business in Massachusetts within the meaning of the long-arm statute. The uncontested facts in the record demonstrate that Berkowitz Oliver does not own any real estate, maintain an office, or target (or routinely serve) clients in Massachsuetts. [ECF No. 12-1 ¶¶ 4–5]. Its representation of H&R Block in the Missouri-based Arbitration against Mr. Restuccia, a Massachusetts resident with a Massachusetts lawyer, does not suffice to establish that the law firm was transacting business in Massachusetts. Where Mr. Restuccia (and his attorney) elect to live and work is entirely outside of Berkowitz Oliver's control and, accordingly, Berkowitz Oliver's contacts with Massachusetts are entirely fortuitous. See Lyle Richards, 132 F.3d at 112. None of the cases that Mr. Restuccia

cites, see [ECF No. 16 at 7–8], suggest that a law firm transacts business in Massachusetts within the meaning of § 3(a) merely by representing a non-Massachusetts client in an adversarial legal proceeding, in a non-Massachusetts forum, even if the opposing party and counsel are Massachusetts residents, and the Court is unwilling to read § 3(a) so broadly in the absence of on-point authority.[6]  Accordingly, the Court finds that § 3(a) is inapplicable.[7]

Pursuant to § 3(c), "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . causing tortious injury by an act or omission in this commonwealth."  Mass. Gen. Laws ch.

---

[6] In Haddad v. Taylor, which Mr. Restuccia relies upon heavily, a plaintiff sued a New York-based attorney for "deceptively frustrat[ing]" a real estate transaction in violation of Chapter 93A.  588 N.E.2d 1375, 1376 (Mass. App. Ct. 1992).  In reversing the trial court's dismissal based on a lack of personal jurisdiction, the court gave significant weight to the fact that the disputed transaction involved the sale of Massachusetts real estate.  See id. at 1377. Because the property was in Massachusetts, the court reasoned that the defendant could foresee needing to invoke the benefits and protections of Massachusetts law.  Id.  In this case, however, nothing about Berkowitz Oliver's work for H&R Block—in a Missouri-based arbitration— would lead it to reasonably believe that it might be subject to personal jurisdiction in Massachusetts.  Further, while the attorney in Haddad was actively negotiating the transaction with the plaintiff in a collaborative setting, Berkowitz Oliver is representing H&R Block in an adversarial proceeding and therefore has no choice but to interact with Mr. Restuccia and/or his Massachusetts-based attorney.

[7] Even assuming Berkowitz Oliver did transact business in Massachusetts, § 3(a) would still be inapplicable because Mr. Restuccia's claims do not arise out of Berkowitz Oliver's Massachusetts business.  With respect to Mr. Restuccia's fraud and declaratory judgment claims, the Contracts were executed well before H&R Block retained Berkowitz Oliver and Berkowitz Oliver played no part in negotiating them.  See [Compl. ¶ 25 (noting that the Acquisition Agreement, the last of the Contracts, was executed in August 2018); ECF No. 12-1 ¶ 6 (noting that Berkowitz Oliver was not retained by H&R Block until 2020)].  Thus, Mr. Restuccia's personal liability under the Contracts, and whether Mr. Restuccia was fraudulently induced into executing them, in no way arises out of Berkowitz Oliver's activities in Massachusetts.  Finally, as to Mr. Restuccia's Chapter 93A claim, the basis of which remains unclear, see [Compl. ¶¶ 66–72], to the extent it is based on any conduct pre-dating 2020, it cannot be said to arise from Berkowitz Oliver's contact with Massachusetts.  Further, insofar as it is premised on H&R Block's conduct in the Arbitration, it still does not arise from any Massachusetts contacts because the Arbitration is taking place in Missouri (and any contact that Berkowitz Oliver has with Massachusetts, such as serving legal papers on Mr. Restuccia, is ancillary).

223A, § 3(c).  "[S]ection 3(c) requires a well-pleaded allegation that a defendant did some act in the Commonwealth that caused the plaintiff harm."  Collision Commc'ns, Inc. v. Nokia Sols. & Networks Oy, 485 F. Supp. 3d 282, 293 (D. Mass. 2020) (alteration in original) (quoting Noonan v. Winston Co., 902 F. Supp. 298, 306 (D. Mass. 1995)).  Here, Berkowitz Oliver did not do anything in Massachusetts, let alone something that harmed Mr. Restuccia.  At most, Berkowitz Oliver engaged in motion practice in a Missouri-based arbitration (on behalf of its Missouri-based client) and corresponded with and/or sent legal papers to Mr. Restuccia and/or his attorney, who happen to reside and/or work in Massachusetts.  That is not enough, and the cases that Mr. Restuccia relies upon do not suggest otherwise.[8]

Finally, § 3(d) provides that

[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from . . . causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth . . . .

Mass. Gen. Laws ch. 223A, § 3(d).  Section 3(d) is the Massachusetts long-arm statute's general personal jurisdiction provision and is applicable only if the defendant is subject to general personal jurisdiction in Massachusetts.  See Pettengill v. Curtis, 584 F. Supp. 2d 348, 357 (D.

---

[8] None of the cases that Mr. Restuccia relies on involved a law firm defendant that was acting on behalf of a client involved in a litigation when it engaged in the purportedly wrongful behavior. See N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8 (1st Cir. 2009); Murphy v. Erwin-Wasey, Inc., 460 F.2d 661 (1st Cir. 1972); Adamcheck v. Costco Wholesale Corp., No. 08-cv-10182, 2008 WL 7536878 (D. Mass. June 11, 2008); Rye v. Atlas Hotels, Inc., 566 N.E.2d 617 (Mass. App. Ct. 1991).  Without more clear-cut case law, the Court is unwilling to find that a non-Massachusetts law firm is subject to personal jurisdiction under § 3(c) merely because it served a Massachusetts resident with legal pleadings (and/or engaged in other litigation-based communications) as part of its representation of a non-Massachusetts client in an arbitration in a non-Massachusetts forum, even if the plaintiff alleges that the pleadings contained false and baseless assertions.  It is too tenuous a connection to Massachusetts to support a finding of personal jurisdiction.

Mass. 2008) ("§ 3(d) would only apply if general jurisdiction existed over the . . .

[d]efendants."); Krua v. Sirleaf, No. 18-cv-10574, 2019 WL 1936733, at *4  (D. Mass. May 1,

2019) ("[Plaintiffs] have also not alleged sufficient facts to establish general jurisdiction . . .

which is necessary for jurisdiction under § 3(d)." (citing Pettengill, 584 F. Supp. 2d at 357)).

Given that it is a Missouri LLP, with its principal place of business in Missouri, and does not

own property, solicit clients, have an office, or regularly serve clients in Massachusetts, [ECF

No. 12-1 ¶¶ 4–5], Berkowitz Oliver is not subject to general personal jurisdiction here.[9]

Accordingly, § 3(d) is inapplicable.

Although the Court could stop the analysis here, in the interests of a comprehensive

record, it will briefly consider jurisdiction under the U.S. Constitution.  Courts may exercise two

types of personal jurisdiction under the Fourteenth Amendment: general and specific.

"[G]eneral jurisdiction requires affiliations 'so "continuous and systematic" as to render

[a person] essentially at home in the forum State.'"  Daimler AG v. Bauman, 571 U.S. 117, 133

n.11 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919

(2011).  Although the "paradigmatic examples of locales in which a defendant corporation is

considered at home are its state of incorporation and the state that houses its principal place of

business," in some cases "a defendant corporation's general business operations in a state in

which it is neither incorporated nor headquartered 'may be so substantial and of such a nature as

to render the corporation at home in that State.'"  Kuan Chen v. United States Sports Acad., Inc.,

956 F.3d 45, 57 (1st Cir. 2020) (quoting Daimler, 571 U.S. at 139 n.19).  Here, Mr. Restuccia

---

[9] Mr. Restuccia asserts that Berkowitz Oliver engaged in a "persistent course of conduct" in
Massachusetts because it served him with H&R's counterclaims in the Arbitration,
communicated with his Massachusetts-based bankruptcy attorneys, and moved to join
Mr. Restuccia in the Arbitration.  [ECF No. 16 at 11].  These allegations, however, are plainly
insufficient to trigger § 3(d).

has specifically alleged that Berkowitz Oliver is a Missouri LLP with its principal place of business in Missouri.  [Compl. ¶ 5].  Further, it is clear that Berkowitz Oliver's contacts with Massachusetts are not substantial enough to render it subject to general personal jurisdiction.  Cf. Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 447–48 (1952) (finding that a company was subject to general jurisdiction in Ohio where the company had ceased operating in the Philippines because of World War II and the president of the company relocated to Ohio and conducted business from an office there).[10]

"Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities."  Swiss Am. Bank, Ltd., 274 F.3d at 618 (quoting Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998)). For the Court to exercise specific personal jurisdiction over Berkowitz Oliver consistent with the Due Process Clause, each of three conditions must be satisfied:

> First, the claim underlying the litigation must directly arise out of, or relate to, the [Berkowitz Oliver's] forum-state activities.  Second, [Berkowitz Oliver's] in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making [Berkowitz Oliver's] involuntary presence before the state's courts foreseeable.  Third, the exercise of jurisdiction must . . . be reasonable.

Daynard, 290 F.3d at 60 (quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 144 (1st Cir. 1995)).

Here, the purposeful availment prong is not satisfied.  For Berkowitz Oliver to have purposefully availed itself of the privilege of conducting activities in Massachusetts, its contacts with Massachusetts must have been voluntary, so that "jurisdiction is not premised on 'random, isolated, or fortuitous' contacts with the forum state," Katz v. Spiniello Cos., 244 F. Supp. 3d

---

[10] The Supreme Court has described Perkins as the "textbook case of general jurisdiction." Daimler, 571 U.S. at 129.

237, 245 (D. Mass. 2017) (citation omitted), and foreseeable, such that it should "reasonably anticipate being haled into court" in Massachusetts, Phillips, 530 F.3d at 28 (quoting Adelson v. Hananel, 510 F.3d 43, 50 (1st Cir. 2007)).  "Voluntariness requires that the defendant's contacts with the forum state 'proximately result from actions by the defendant [itself].'"  Id. (quoting Burger King, 471 U.S. at 475).  Those contacts "must be deliberate, and 'not based on the unilateral actions of another party.'"  Id. (quoting Adelson, 510 F.3d at 50).  Here, Berkowitz Oliver's contacts with Massachusetts depend on the unilateral actions of others, namely Mr. Restuccia and his attorney.  The firm—which, as noted above, represents a non-Massachusetts client in an adversarial legal proceeding in a non-Massachusetts forum— would have had no contact with Massachusetts if Mr. Restuccia and his attorney resided and worked elsewhere.  Further, where Mr. Restuccia and his attorney reside and/or work is entirely outside of Berkowitz Oliver's control, which renders Berkowitz Oliver's contacts with Massachusetts involuntary.[11]  Accordingly, because Berkowitz Oliver has not purposefully availed itself of the privilege of conducting activities in Massachusetts, the Court cannot constitutionally exercise personal jurisdiction over it.  See Daynard, 290 F.3d at 60 (noting that to establish specific personal jurisdiction, a plaintiff must adequately demonstrate purposeful availment).

Thus, because the Court cannot exercise personal jurisdiction over Berkowitz Oliver under either the Massachusetts long-arm statute or the U.S. Constitution, Berkowitz Oliver's motion to dismiss, [ECF No. 11], is GRANTED.

---

[11] While a law firm can choose clients based on geography, they have no choice in where opposing parties and opposing counsel reside.

C.      The Individual Defendants

Mr. Restuccia asserts that the Individual Defendants are subject to personal jurisdiction here based on their contacts with Massachusetts even though those contacts were made when the Individual Defendants were acting on behalf of their employer, H&R Block.  [ECF No. 19 at 6–8; ECF No. 33 at 7–8].  The Individual Defendants maintain that a plaintiff seeking to assert personal jurisdiction over employees based on actions they took in an official capacity is required to demonstrate that the individuals personally benefitted or acted beyond the scope of their employment and that Mr. Restuccia has failed to do so.  [ECF No. 15 at 12–14; ECF No. 31 at 9–10].

While H&R Block itself has not contested jurisdiction, see [ECF No. 9 (not raising lack of personal jurisdiction as a ground for dismissal)], "[i]t is well established that jurisdiction over the individual officers of a corporation may not be based on jurisdiction over the corporation," Grice v. VIM Holdings Grp., LLC, 280 F. Supp. 3d 258, 277 (D. Mass. 2017) (quoting Confederate Motors, Inc. v. Terny, 831 F. Supp. 2d 405, 411 (D. Mass. 2011)).  "Although Massachusetts courts have rejected the blanket assertion that individuals acting in their official capacity are shielded from suit in their individual capacity, 'more than mere participation' in the affairs of the corporation is required."  King v. Prodea Sys., Inc., 433 F. Supp. 3d 7, 16 (D. Mass. 2019) (quoting M-R Logistics, LLC v. Riverside Rail, LLC, 537 F. Supp. 2d 269, 279 (D. Mass. 2008)).  "For jurisdictional purposes, employees are 'not to be judged according [to] their employer's activities [but by whether they were] primary participants in the alleged wrongdoing intentionally directed at the forum.'"  M-R Logistics, 537 F. Supp. 2d at 280 (second alteration in original) (quoting LaVallee v. Parrot-Ice Drink Prods. of Am., Inc., 193 F. Supp. 2d 296, 301 (D. Mass. 2002)).  Therefore, "[t]he Court must inquire whether, under general principles of agency

14

law, the officer or employee derived personal benefit from his/her contacts in Massachusetts

and/or acted beyond the scope of his/her employment." Carp v. XL Ins., 754 F. Supp. 2d 230,

233 (D. Mass. 2010).

Here, Mr. Restuccia has not alleged or adduced any evidence that the Individual

Defendants personally benefitted from, or acted beyond the scope of their employment in

connection with, their (limited) contacts with Massachusetts.[12]  To the contrary, Mr. Restuccia's

allegations make clear that the Individual Defendants were mere conduits through which H&R

Block conducted business with Mr. Restuccia.[13]  Accordingly, the Court lacks personal

jurisdiction over them.[14]  See King, 433 F. Supp. 3d at 16 (concluding that the court had no

---

[12] The Court notes that the factual allegations in the complaint concerning Mr. Moore's contacts
with Massachusetts are scarce and suggest only that Mr. Moore (1) signed the Contracts, which
had a Massachusetts counterparty, on H&R Block's behalf, (2) sent emails to Mr. Restuccia in
Massachusetts, and (3) visited Massachusetts in November 2019 to discuss business with
Mr. Restuccia.  See [Compl. ¶¶ 23, 35–38].  Mr. Restuccia's allegations as to Ms. Brock are even
thinner.  He alleges that she (1) sent him documents to review and sign in Massachusetts, (2) was
copied on an email from Mr. Moore to Mr. Restuccia, and (3) sent a single email to
Mr. Restuccia in Massachusetts.  See [id. ¶¶ 20, 23–25].

[13] It is axiomatic law that "a corporation is a creature of the law that 'can only act through its
agents.'"  In re Gannon, 598 B.R. 72, 81 (Bankr. D. Mass. 2019) (quoting Sunrise Props., Inc. v.
Bacon, Wilson, Ratner, Cohen, Salvage, Fialky & Fitzgerald, P.C., 679 N.E.2d 540, 543 (Mass.
1997)).  Significantly, neither Mr. Moore nor Ms. Brock is an officer (or a particularly
high-ranking employee) of H&R Block.  See [ECF No. 15-1 ¶ 4 (noting that Mr. Moore is a Vice
President); ECF No. 31-1 ¶ 4 (noting that Ms. Brock is a Project Manager)].

[14] In opposing the Individual Defendants' motions to dismiss, Mr. Restuccia states that the
fiduciary shield doctrine is not recognized under Massachusetts law.  See [ECF No. 19 at 6–7].
He is, however, fighting a strawman.  The Court acknowledges that Massachusetts courts "have
consistently rejected a blanket rule that employees who act in their official capacity are
absolutely shielded from suit in their individual capacity," M-R Logistics, 537 F. Supp. 2d at
280, but that does not change the fact that, to assert personal jurisdiction over corporate
employees, "more than mere participation in the corporation's affairs is required," id.
Mr. Restuccia seems to argue that the Individual Defendants made misrepresentations to him that
go beyond merely participating in H&R Block's affairs, but his allegations are wholly
conclusory.  See [Compl. ¶¶ 77, 84].  His well-pleaded factual allegations demonstrate only that
Mr. Moore signed the Contracts on H&R Block's behalf, [id. ¶¶ 11, 15, 26], that Mr. Moore and

personal jurisdiction over individual officers who did not personally benefit or act outside the scope of their employment); Carp, 754 F. Supp. 2d at 233 (determining that corporate officer was not subject to the court's personal jurisdiction where his contacts with Massachusetts were made within the scope of his employment and there was no allegation that he derived any personal benefit); LaVallee, 193 F. Supp. 2d at 302 (finding jurisdiction lacking where defendant, who was alleged to have made misrepresentations to the Massachusetts-based plaintiff, was "more like a junior business associate" than a primary participant in the alleged wrongdoing and derived no personal benefits from his Massachusetts contacts).  The Individual Defendants' motions to dismiss for lack of personal jurisdiction, [ECF No. 14 (Mr. Moore); ECF No. 30 (Ms. Brock)], are therefore GRANTED.[15]

---

Ms. Brock engaged in routine correspondence with Mr. Restuccia regarding the Contracts, [id. ¶¶ 20–24, 36–38], and that Mr. Moore traveled to Massachusetts once to represent H&R Block in a parlay with Mr. Restuccia, [id. ¶ 35].  Against this backdrop, the Court cannot find that the Individual Defendants are subject to the Court's personal jurisdiction.

[15] Even assuming the Court did have jurisdiction over the Individual Defendants, Mr. Restuccia's claims against them would still fail.  The factual allegations in the complaint do not plausibly suggest that either Mr. Moore or Ms. Brock engaged in any unfair or deceptive trade practice in violation of Chapter 93A, and, with respect to Mr. Restuccia's fraud claims, his allegations are plainly insufficient in light of the heightened pleading standard for those claims.  See generally Fed. R. Civ. P. 9(b); Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004). Notably, Mr. Restuccia describes with specificity only a single representation made by either Mr. Moore or Ms. Brock—that the personal liability provision in the Acquisition Agreement would be removed at Mr. Restuccia's request, see [Compl. ¶ 23],—and the Acquisition Agreement itself demonstrates that Mr. Moore's representation on that point was truthful, see [ECF No. 1-1 (the Acquisition Agreement, which contains no personal liability provision)]. Mr. Restuccia's conclusory allegation that the Individual Defendants "misrepresented the essential nature of the Contracts at issuance [sic], i.e., that they were only binding on the Franchisee, R&R," [Compl. ¶ 77], need not be considered, see A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (noting that courts need not credit conclusory legal allegations).

III.        H&R BLOCK

H&R Block argues that: (1) Mr. Restuccia's claims must be arbitrated and, further, that the threshold question of arbitrability must be decided by the arbitrator, [ECF No. 9 at 14–19], (2) if Mr. Restuccia's claims are found to be non-arbitrable, the case should be transferred to the United States District Court for the Western District of Missouri, [id. at 19–22], and (3) Mr. Restuccia has failed to plausibly state a claim, [id. at 22–27].  Mr. Restuccia counters that (1) he is not party to any arbitration agreement, [ECF No. 13 at 6–12], (2) this district is an appropriate venue, [id. at 12–14], and (3) his allegations are sufficient to survive a motion to dismiss, [id. at 14–20].  The Court begins with the arbitration issue, which is dispositive.

Under the Federal Arbitration Act ("FAA"), "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA was enacted primarily to "overcome judicial hostility to arbitration agreements," Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 272 (1995), and it "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."  Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011) (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006)).  As the party seeking to compel arbitration, H&R Block bears the burden of proving "that a valid agreement to arbitrate exists, [it] has a right to enforce it, [Mr. Restuccia] is bound by it, and that the claim asserted falls within the scope of the arbitration agreement."  Oyola v. Midland Funding, LLC, 295 F. Supp. 3d 14, 17 (D. Mass. 2018) (citing Bekele v. Lyft, Inc., 199 F. Supp. 3d 284, 293 (D. Mass. 2016), aff'd, 918 F.3d 181 (1st Cir. 2019)).  For the reasons that follow, the Court finds that H&R Block

has met its burden of proving that Mr. Restuccia is bound by a valid arbitration agreement and

that the arbitrator must now determine whether Mr. Restuccia's claims in this litigation are

covered by the arbitration agreement.

As an initial matter, the Court finds that Mr. Restuccia, who signed the FLA as

"Franchisee and Principal," [ECF No. 9-1 at 37], is bound by that agreement.  The FLA defines

"Principal" as

> Franchisee, if Franchisee is an individual; or an individual approved by H&R Block
> who holds an Equity Interest in Franchisee, if Franchisee is a business entity, who
> personally assumes and agrees to be bound by all of the terms of [the FLA] in a
> document satisfactory to H&R Block, and to whom H&R Block may look to the
> individual, in addition to the business entity, for the proper performance of
> Franchisee's obligations under [the FLA].

[ECF No. 9-1 at 6]. Additionally, § 34 of the FLA expressly provides that "[t]he individual

named below as Principal personally assumes and agrees to be personally bound by, faithfully

perform, and cure the default of any performance of all terms, covenants, conditions, and

obligations of Franchisee under [the FLA]."  Id. at 35].  Further, § 19 of the FLA, the contract's

"Change of Principal" provision, also demonstrates that the FLA contemplates that the individual

named "Principal" (i.e., Mr. Restuccia) would be personally bound.  See [id. at 30–31].[16]  In

---

[16] Mr. Restuccia argues that because he never executed a separate "document satisfactory to
H&R Block" pursuant to which he "personally assume[d] and agree[d] to be bound by all of the
terms" of the FLA, the definition of Principal does not apply to him, and he is not bound by the
FLA.  [ECF No. 13 at 8–9].  First, as H&R Block points out, [ECF No. 20 at 7], the definition of
Principal does not require a separate document, and the FLA itself can bind Mr. Restuccia as
Principal so long as it is "satisfactory to H&R Block," [ECF No. 9-1 at 6].  Further,
Mr. Restuccia fails to address §§ 19 and 34, which make clear that Mr. Restuccia was assuming
personal liability under the FLA.

sum, by signing the FLA as "Principal," Mr. Restuccia agreed to be personally bound by the FLA's terms.[17]

As amended, the FLA's choice of venue provision provides that: "All disputes between H&R Block and Franchisee will be resolved through binding arbitration administered by the American Arbitration Association (AAA) pursuant to its Commercial Arbitration Rules and Mediation Procedures and related fee schedules." [ECF No. 9-3 at 3].[18] Rule 7(a) of the AAA's Commercial Arbitration Rules and Mediation Procedures ("Commercial Rules") states that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." American Arbitration Association, Commercial Rules and Mediation Procedures, Rule 7(a) (2013). Recently, the Supreme Court instructed that

> [w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the

---

[17] Mr. Restuccia maintains that his signature as Principal should be disregarded because he signed the FLA electronically. [ECF No. 13 at 9]. This argument, which is unaccompanied by any citation to authority, see [id.], fails. If Mr. Restuccia was unwilling to sign the FLA as a Principal, and assume the incumbent responsibilities, he should not have inserted his electronic signature. Mr. Restuccia also contends that the Court must, at this stage of the litigation, accept as true his allegation that he did not sign the FLA in his individual capacity. [ECF No. 13 at 7]. But the allegation that he points to, [Compl. ¶ 13 ("Plaintiff was not a party to the FLA.")], is a legal conclusion that need not be credited.

[18] Mr. Restuccia does not dispute that the arbitration provision is valid; he merely argues that he is not a party to the FLA (or to the amendment containing the arbitration agreement) and is therefore not bound by them. See [ECF No. 13 at 6–12]. Mr. Restuccia also asserts that he signed the amendment only as President and not as "Principal" and therefore did not agree to assume obligations contained in the amendment (including the arbitration agreement). See [id. at 11–12]. First, the amendment's signature block clearly indicates that an individual signing on behalf of an entity would be doing so as a Principal. See [ECF No. 9-3 at 3]. Second, even if he did not sign the amendment as Principal, Mr. Restuccia signed *the FLA* as Principal and agreed to be bound by its terms, which were amended pursuant to the amendment.

argument that the arbitration agreement applies to a particular dispute is wholly groundless.

Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 529 (2019).  Still, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."  First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995) (second and third alteration in original) (quoting AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986)).

Although the Supreme Court has not, to date, taken a position on whether the incorporation of the AAA's rules is clear and unmistakable evidence of intent to delegate arbitrability, the First Circuit has held that it is.  E.g., Bossé v. New York Life Ins. Co., 992 F.3d 20, 29 (1st Cir. 2021) ("This Court is clear that incorporation of the AAA arbitration rules constitutes clear and unmistakable evidence of the parties' intent to delegate arbitrability issues to the arbitrator." (citing Awuah v. Coverall N. Am., Inc., 554 F.3d 7, 11–12 (1st Cir. 2009))).[19] Accordingly, because the FLA's arbitration provision incorporates the AAA's Commercial Rules, the arbitrability question is delegated to the arbitrator.  For that reason, Mr. Restuccia must submit his claims to the AAA for a determination as to arbitrability (i.e., whether they

---

[19] So, too, have numerous other federal courts of appeals.  See, e.g., Commc'ns Workers of Am. v. AT&T Inc., 6 F.4th 1344, 1347 (D.C. Cir. 2021) ("We have held that the requisite clear and unmistakable delegation occurs when the parties' agreement incorporates arbitral rules that in turn assign questions of arbitrability to the arbitrator."); Goldgroup Res., Inc. v. DynaResource de Mexico, S.A. de C.V., 994 F.3d 1181, 1191 (10th Cir. 2021) ("[W]e have repeatedly held that contracting parties' incorporation of the AAA Rules into their arbitration agreement constitutes 'clear and unmistakable evidence of an agreement to arbitrate arbitrability.'" (quoting Dish Network L.L.C. v. Ray, 900 F.3d 1240, 1246 (10th Cir. 2018)); In re Checking Account Overdraft Litig., 856 F. App'x 238, 243 (11th Cir. 2021) ("We have repeatedly ruled that the reference or incorporation  of AAA Rules with language providing that 'the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement' demonstrates a clear and unmistakable intent that the arbitrator should decide all questions of arbitrability.").

constitute "disputes between H&R Block and Franchisee" covered by the arbitration provision).

H&R Block's motion to dismiss, [ECF No. 8], is therefore <u>GRANTED</u>.[20]

## IV.       CONCLUSION

In sum, the Court lacks personal jurisdiction over Berkowitz Oliver and the Individual

Defendants, and Mr. Restuccia must submit his claims against H&R Block to the AAA for an

arbitrability determination.  Defendants' motions to dismiss, [ECF Nos. 8, 11, 14, 30], are

therefore <u>GRANTED</u>, and Mr. Restuccia's complaint is <u>DISMISSED</u> without prejudice.

**SO ORDERED.**

October 7, 2021                                              /s/ Allison D. Burroughs
                                                            ALLISON D. BURROUGHS
                                                            U.S. DISTRICT JUDGE

---

[20] The Court does not reach H&R Block's other arguments in favor of dismissal and/or transfer.